UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JERRY KNIGHT

                        Plaintiff,

        - against -

WORLD COURIER, INC., RAKESH OODHICAN, NAVIN HUSSAIN, SALINA SULTANA, (Sued in their Individual Capacities Pursuant to New York Executive Law §290 *et seq*),

                    Defendants.

CV: 22-3056

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Jerry Knight ("Plaintiff"), by his attorneys Scott Michael Mishkin, P.C., hereby complain of Defendants World Courier, Inc. ("World Courier"), Rakesh Oodhican ("Oodhican"), Navin Hussain ("Hussain"), Salina Sultana ("Sultana") (collectively referred to as "Defendants"), as follows:

## PRELIMINARY STATEMENT

This action is brought by Plaintiff as for and against Defendants for employment discrimination based on race/ethnicity and national origin and retaliation due to engagement in protected activity pursuant to: (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"); (ii) New York State Human Rights Law, New York Executive Law §§290, *et seq.* ("NYEL").

## JURISDICTION

FIRST:       This Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343, and supplemental jurisdiction over Plaintiffs' pendant claims brought under NYEL pursuant to 28 U.S.C. §1367(a) as they arise from the same events and controversy.

## VENUE

SECOND:     Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because Defendant conducts business within this District as well as this District being where the causes of action arose.

## PARTIES

THIRD:     Plaintiff is a White-American male residing in Lynbrook, New York.

FOURTH:     On or about February 25, 2022, Plaintiff received a right to sue letter from the EEOC bearing Charge Number 520-2021-02720.

FIFTH:     Defendant World Courier is a global logistics company that designs logistics and supply chain programs.

SIXTH:      At all times relevant to this action, Oodhican, dark-skinned Guyanese, was the Dispatch Supervisor at World Courier.

SEVENTH:     Oodhican has and had the authority to assist in the hiring, firing and disciplining of employees at World Courier.

EIGHTH:     Oodhican has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his willful discriminatory and retaliatory actions.

NINTH:     Oodhican aided, abetted, incited, controlled, compelled, and/or coerced the acts against Plaintiff.

TENTH:     Oodhican actually participated in the conduct giving rise to Plaintiffs' claims and is thereby individually liable for his willful discriminatory and retaliatory actions.

ELEVENTH: Oodhican, in a supervisory position, willfully and with the malicious intent to cause Plaintiff harm, discriminated against Plaintiff due to his race and/or national origin, Ethnicity and retaliated against plaintiff for his engagement in protected activity.

TWELFTH:   Oodhican had personal involvement in unlawfully discriminating and retaliating against Plaintiff and is therefore personally liable.

THIRTEENTH:      At all times relevant to this action, Hussain, dark-skinned Guyanese, was World Courier's Dispatch Supervisor.

FOURTEENTH:      Hussain aided, abetted, incited, controlled, compelled, and/or coerced the acts against Plaintiff.

FIFTEENTH: Hussain has and had the authority to assist in the hiring, firing and disciplining of employees at World Courier.

SIXTEENTH: Hussain has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his willful discriminatory and retaliatory actions.

SEVENTEENTH:      Hussain actually participated in the conduct giving rise to Plaintiff's claims and is thereby individually liable for his willful discriminatory and retaliatory actions.

EIGHTEENTH:      Hussain willfully and with the malicious intent to cause Plaintiff harm, discriminated against Plaintiff due to his race and/or national origin and retaliated against plaintiff for his engagement in protected activity.

NINETEENTH:      Hussain had personal involvement in unlawfully discriminating and retaliating against Plaintiff and is therefore personally liable.

3

TWENTIETH:        Hussain in a supervisory position, willfully and with the malicious intent to cause Plaintiff harm, discriminated against Plaintiff due to his race and/or national origin, Ethnicity and retaliated against plaintiff for his engagement in protected activity.

TWENTY-FIRST:    At all times relevant to this action, Sultana, dark-skinned Guyanese, was the Human Resource Department Representative at World Courier.

TWENTY-SECOND: Sultana has and had the authority to assist in the hiring, firing and disciplining of employees at World Courier.

TWENTY-THIRD:    Sultana has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her willful discriminatory and retaliatory actions.

TWENTY-FOURTH: Sultana aided, abetted, incited, controlled, compelled, and/or coerced the acts against Plaintiff.

TWENTY-FIFTH:     Sultana actually participated in the conduct giving rise to Plaintiffs' claims and is thereby individually liable for her willful discriminatory and retaliatory actions.

TWENTY-SIXTH:     Sultana, in a supervisory position, willfully and with the malicious intent to cause Plaintiff harm, discriminated against Plaintiff due to his race and/or national origin and retaliated against plaintiff for his engagement in protected activity.

TWENTY-SEVENTH:        Sultana had personal involvement in unlawfully discriminating against Plaintiff and is therefore personally liable.

## FACTS

TWENTY-EIGHTH:  Plaintiff began his employment with World Courier on or about May 5, 2008, in the Dispatcher/Driver Department in the position of Truck/Van Driver.

TWENTY-NINTH:   At all times during his entire career at World Courier, Plaintiff more than satisfactorily performed all of his position responsibilities which included, but was not limited to, transporting of clinical trials, pharmaceuticals, live animals (such as mice, rats and rabbits) for scientific research, as well as the transporting of hazardous viruses such as HIV and biological samples of the Corona Virus ("COVID-19").

THIRTIETH:  On or about March 24, 2020, when COVID-19 was apparent in the United States and while World Courier was transporting biological samples of COVID-19, World Courier announced that another World Courier Driver tested positive for COVID-19.

THIRTY-FIRST:      In response, Ryan LaRosa ("LaRosa"), World Courier's Operation Manager, told World Courier's Drivers in a meeting that COVID-19 was in World Courier's building, which was in fact the building Plaintiff was working and that World Courier was going to "clean more" but that World Courier "did not know" if COVID -19 was spreading.

THIRTY-SECOND:  While working in World Courier's building, Plaintiff asked LaRosa if World Courier had any masks for protection in the workplace.

THIRTY-THIRD:      In response, LaRosa told Plaintiff that masks would be arriving at World Courier soon, but that gloves were available and to take "as much as needed" and added that there were "plenty of gloves."

THIRTY-FOURTH:  Plaintiff advised LaRosa that he wanted to remain safe while working in World Courier's building and carrying out his position responsibilities and also asked

if World Courier would provide hand sanitizer, to which LaRosa said there was "plenty" of that as well.

THIRTY-FIFTH:     As Plaintiff wanted to proceed working in World Courier's workplace with extreme caution for his and his co-worker's health and safety, he personally ordered masks at a cost to him of on or about Two Hundred ($200.00) Dollars.

THIRTY-SIXTH:     On April 15, 2020, Plaintiff asked Oodhican, if masks were available.

THIRTY-SEVENTH: Oodhican told Plaintiff World Courier had no masks.

THIRTY-EIGHTH:   Plaintiff followed up approximately twenty (20) times with Oodhican for the availability of masks and each time Oodhican told Plaintiff there were "no masks available."

THIRTY-NINTH:     Demonstrating the disparate treatment based on Race, National Origin and Ethnicity, Plaintiff witnessed Oodhican giving Plaintiff's similarly situated dark-skinned Guyanese co-workers masks that were provided by World Courier, clearly demonstrating discrimination against Plaintiff.

FORTIETH:   In a further act of discrimination against Plaintiff, Oodhican told Plaintiff to spray his own used masks with alcohol, but did not give the same direction to Plaintiff's similarly situated dark-skinned Guyanese co-workers.

FORTY-FIRST:     Plaintiff advised Oodhican that spraying alcohol into his used mask and breathing in alcohol was not safe.

FORTY-SECOND:    In a further act of discrimination against Plaintiff due to his Race, National Origin and Ethnicity, Hussain asked Plaintiff why was he taking so many gloves, but did not ask Plaintiff's similarly situated dark-skinned Guyanese co-workers.

FORTY-THIRD:   In response to Hussain's disparate treatment of him, Plaintiff advised Hussain that he was protecting himself from COVID-19 in World Courier's workplace and to safely fulfill his position responsibilities.

FORTY-FOURTH:   As Plaintiff was afraid of being terminated, he told Hussain that he would put the gloves back in the box.

FORTY-FIFTH:   Plaintiff then asked Hussain why he and Oodhican would not give him a mask and why did he and Oodhican always tell him that World Courier did not have any masks to give him, when he personally witnessed Oodhican and Hussain providing masks to his similarly situated dark-skinned Guyanese co-workers.

FORTY-SIXTH:   Hussain did not respond.

FORTY-SEVENTH:   Hussain's discrimination against Plaintiff continued and is further demonstrated when Hussain would provide masks to Plaintiff's similarly situated dark-skinned Guyanese co-workers and when Plaintiff was next to receive his mask, Hussain, while holding masks in his hand, would tell Plaintiff that he did not have any more masks to give him and then put the masks he was holding back inside his drawer, closed the drawer and then looked Plaintiff in the eye and told him there were not any more mask available.

FORTY-EIGHTH:   Plaintiff could not believe the blatant discrimination against him by Hussain.

FORTY-NINTH:   Plaintiff asked Hussain again why he would not give him a mask.

FIFTIETH:   Hussain's anger presented itself and in a manner of rage, and he screamed at Plaintiff, "you want a mask!?"

FIFTY-FIRST:   Plaintiff responded "yes."

7

FIFTY-SECOND:     Hussain then went to his drawer, took out a mask and threw it at Plaintiff and then told him "it was the only mask" he would get.

FIFTY-THIRD:     To demonstrate World Courier's pattern and practice of Race, National Origin and Ethnicity discrimination against White Americans in its workplace, Defendants would not provide Plaintiff's White American similarly situated co-worker, John LaCorte ("LaCorte") with a mask either.

FIFTY-FOURTH:     LaCorte also repeatedly requested masks from Oodhican, and each time, Oodhican told LaCorte that he did not have any, when in fact he was giving them out to Plaintiff's and LaCorte's similarly situated dark-skinned Guyanese co-workers and told LaCorte "work is more important than your own life."

FIFTY-FIFTH:     Further demonstrating Defendants ongoing disparate treatment against Plaintiff due to his Race, National Origin and Ethnicity, on Saturday May 9, 2020, Plaintiff, in the presence of LaCorte, asked Oodhican if he had any masks, at the same time Oodhican just asked Plaintiff's similarly situated dark-skinned Guyanese co-worker named Jad, if he wanted a mask.

FIFTY-SIXTH:     In response to Plaintiff's request, Oodhican told Plaintiff that he did not have any masks to give him and told Plaintiff to go to CVS and buy his own masks and that they were selling them for $2.00 a piece.

FIFTY-SEVENTH:     Oodhican never told any of Plaintiff's similarly situated dark-skinned Guyanese co-workers to go to CVS and buy their own masks, clearly demonstrating disparate treatment against Plaintiff due to his Race, National Origin and Ethnicity.

8

FIFTY-EIGHTH:      On May 12, 2020, Plaintiff formally complained to LaRosa about the unlawful and ongoing discriminatory treatment he was being subjected to by Oodhican and Hussain and asked LaRosa when the masks were going to be available to him.

FIFTY-NINTH:      In an angry response, LaRosa repeated three times to Plaintiff, "this Saturday" and added that there were plenty of masks available and he did not know why Oodhican was telling him that there were no masks available.

SIXTIETH:      LaRosa then told Plaintiff that he could take a box of masks and that, once again he was going to talk to Oodhican about the masks.

SIXTY-FIRST:      Also, on Tuesday May 12, 2020, due to his formal complaint to LaRosa, Sultana telephoned Plaintiff and discussed the ongoing disparate discriminatory treatment he was being subjected to by Hussain and Oodhican.

SIXTY-SECOND:      At the conclusion of Plaintiff's formal complaint to Sultana, Sultana told Plaintiff she was "looking into them."

SIXTY-THIRD:      On May 13, 2020, Oodhican was forced to distribute masks to Plaintiff and LaCorte and by his demeanor and actions, it was clear he did not like giving the masks to World Courier's White American Drivers.

SIXTY-FOURTH:      In act of retaliation for his engagement in protected activity and based on the totality of circumstances, the very afternoon in which Oodhican was forced to give Plaintiff a mask, Plaintiff received a telephone call from Sultana demanding to know why Plaintiff was using so many gloves.

SIXTY-FIFTH:      Plaintiff advised Sultana that every time he had to touch a shipping box, glass, the door to the truck, work cell phone, and other things, he would need fresh gloves.

SIXTY-SIXTH:      In addition to his formal complaints of the disparate treatment he was being subjected to by Oodhican and Hussain due to his Race, National Origin and Ethnicity, after his meeting with Sultana on May 13, 2020, Plaintiff submitted a written formal complaint to her complaining of further disparate treatment due to his Race, National Origin and Ethnicity.

SIXTY-SEVENTH:   As a result of his engagement in protected activity, within four business days of May 13, 2020, that being May 19, 2020, World Courier took the adverse action against Plaintiff and terminated him for use of gloves and without ever advising him of its purported investigation of his formal complaint of discrimination against him in the workplace.

SIXTY-EIGHTH:     Defendant's pretext was furthered in the termination letter to Plaintiff with its fabrication of performance write ups from Hussain and Oodhican with the fictitious date of February 26, 2020.

SIXTY-NINTH:      And in a further effort to provide a legitimate business reason for his termination, World Courier referenced two meetings Plaintiff had with LaRosa on November 15, 2019, and December 18, 2019, which were resolved with *no disciplinary* and/or *performance warnings* as for and against Plaintiff, which further demonstrates World Courier's pretext.

SEVENTIETH:       Due to blatantly visible retaliation against him by Oodhican and Hussain, Plaintiff's similarly situated co-workers told him to "watch his ass," and that "you know that they hate you and you're not one of them,"

SEVENTY-FIRST:   In regard to Plaintiff being terminated for the pretext of taking gloves to protect himself from COVID-19, when he was contacted by Sultana he asked Sultana why she never got back to him after he formally complained to her of being discriminated against and retaliated against in the workplace when she told him she was "looking into them."

SEVENTY-SECOND:        Sultana, ignored Plaintiff's question and instead demanded that he write a letter to her that day explaining his reason for using so many gloves, clearly demonstrating that Sultana's actions were in retaliation of his engagement in protected activity.

SEVENTY-THIRD: Plaintiff's similarly situated non-white and non-American co-workers committed much more serious infractions as compared to taking gloves and they were not disciplined to the same degree as plaintiff, demonstrating the discriminatory and retaliatory intent.

SEVENTY-FOURTH:        Additionally, upon information and belief, Plaintiff's similarly situated co-workers who did not participate in protected activity as compared to Plaintiff, committed much more serious infractions as compared to taking gloves and they were not disciplined to the same degree as plaintiff demonstrating the retaliatory intent.

SEVENTY-FIFTH:  For example, Eric Gonzales, Hispanic National Origin and Ethnicity, drove World Courier's truck onto the Cross-Island Parkway which is for passenger cars only and hit the top of the roof of the truck on an overpass, then drove the damaged truck to New Jersey from Queens before he notified World Courier of his wrongful act and was not terminated or suspended, clearly demonstrating discrimination against Plaintiff due to his Race, National Origin and Ethnicity and in retaliation of his engagement in protected activity.

SEVENTY-SIXTH:  Andrew Archaball, ("Archaball"), a dark-skinned Guyanese, while on speaker phone, was screaming at LaCorte while LaCorte was at the Delta cargo at JFK airport, in the presence of Delta Cargo Agent.

SEVENTY-SEVENTH:        Despite LaCorte formally complaining to LaRosa of how Archaball treated him, LaRosa took no remedial measures as for and against Archaball, did not write him up and did not terminate him, clearly demonstrating discrimination against Plaintiff

due to his National Origin, Race and Ethnicity and in retaliation of his engagement in protected activity.

SEVENTY-EIGHTH: There was another incident involving Archaball when was on the telephone with Plaintiff while he was at the United Airlines Cargo area at Newark Airport.

SEVENTY-NINTH: Archaball yelled and screamed at Plaintiff and referred to the United Counter Agent as being "fucking stupid" all while on speakerphone.

EIGHTIETH: Despite Plaintiff formally complaining to Sultana about Archaball's actions, and providing the Agent's contact information, no remedial measures were taken as for and against Archaball and he was not terminated, demonstrating discrimination against Plaintiff due to his Race, National Origin and Ethnicity and in retaliation of his engagement in protected activity.

EIGHTY-FIRST: World Courier's Dispatcher Mike Pedro ("Pedro"), Portuguese National Origin and Ethnicity, was known to constantly curse in World Courier's office in front of Oodhican and Hussain after he would end a telephone call with a World Courier's driver, a sales person, client or any one he would speak to and often would refer to them as a "fucking ass hole," "stupid" or a "retard" and yet no remedial measures were taken to correct him by Oodhican or Hussain and he was not terminated, demonstrating discrimination against Plaintiff due to his Race, National Origin and Ethnicity and in retaliation of his engagement in protected activity..

EIGHTY-SECOND: Smoking in World Courier's vans and trucks was strictly prohibited and cause for immediate termination.

EIGHTY-THIRD: However, Plaintiff's similarly situated co-worker, Hans, smoked every day in World Courier's van that Han's drove and it was well known that nobody ever

drove that van he because it smelt so bad, and despite Oodhican and Hussain being fully aware of Hans's violation, Hans was never written up, spoken to or terminated, clearly demonstrating discrimination against Plaintiff due to his Race, National Origin and Ethnicity and in retaliation of his engagement in protected activity.

EIGHTY-FOURTH: In addition, Oodhican and Hussain were fully aware that Hans disregarded speed limits, with average driving speeds of 80 to 90 MPH and as a result hit a pedestrian. However, he was never suspended, disciplined or terminated.

EIGHTY-FIFTH: Oodhican and Hussain were also aware that Archaball and Devo Persaud, another one of Plaintiff's similarly situated dark-skinned Guyanese co-workers, constantly abused another dispatcher Derrick Vasquez by calling him "stupid," "dick head," "ass hole," "jack ass," "gay" and "dick lover," and took no remedial measures to stop this abusive treatment or were they terminated, demonstrating discrimination against Plaintiff due to his Race, National Origin and Ethnicity and in retaliation of his engagement in protected activity.

EIGHTY-SIXTH: Plaintiff's similarly situated co-worker Mike Ramundo, of Italian National Origin and Ethnicity, constantly told dispatch that he could not do a delivery or pickup, as he would not be home on time and would bring back shipments to World Courier when he was supposed to tender them to the airlines. These are all termination offenses and yet he was not terminated, clearly demonstrating discrimination against Plaintiff due to his Race, National Origin and Ethnicity and in retaliation of his engagement in protected activity.

EIGHTY-SEVENTH: Plaintiff's similarly situated co-worker Rocco Santopadre ("Santopadre") was doing a drive to Canada and was stopped at the Canadian Border because the paperwork he provided was insufficient for him to enter Canada. He was directed to stay until

the paperwork was corrected, but he got angry and drove off right back to World Courier's office in New Hyde Park without World Courier's permission.

EIGHTY-EIGHTH:   When Santopadre was asked what he was doing back at World Courier's office he told World Courier's Dispatchers that he got "pissed off" and was tired of waiting and made his own decision to come back on his own and without the permission of World Courier.

EIGHTY-NINTH:    World Courier told him to go home and rest for ten-hours and then go back to Canada the next day.

NINETIETH:  After Santopadre returned to World Courier's New York office, there was e-mail correspondence between the two World Courier offices pertaining to Santopadre's abusive treatment towards other World Courier employees.

NINETY-FIRST:    No remedial measures were taken as for and against Santopadre and he was not terminated, clearly demonstrating discrimination against Plaintiff due to his Race, National Origin and Ethnicity and in retaliation of his engagement in protected activity.

NINETY-SECOND:  Further, there was an event when Oodhican directed Plaintiff to drive him to his own house in a World Courier van to show Oodhican how to fix his rafters in his garage.

NINETY-THIRD:    When Plaintiff told Oodhican that World Courier employees were not permitted to go to their personal houses during their workday with a World Courier van or truck, Oodhican told Plaintiff that he was the boss and "let's go," and "drive me to my house and show me how to fix my ceiling."

NINETY-FOURTH:   Oodhican was not terminated, clearly demonstrating discrimination against Plaintiff due to his National Origin and Ethnicity and in retaliation of his engagement in protected activity.

NINETY-FIFTH:     Another outright World Courier violation by Oodhican occurred when he directed Plaintiff to go and pick up a car part in Bayside, Queens, for his personal Mercedes Benz, while Plaintiff was on duty in a World Courier van.

NINETY-SIXTH:     When Plaintiff advised Oodhican that it was a violation of World Courier's policy, Oodhican told him that "I am the boss and I'm approving it and you won't get in trouble using a World Courier van for your own personal use," clearly demonstrating disparate treatment against Plaintiff due to his National Origin and Ethnicity as Oodhican was not terminated for his egregious violation of World Courier's policy.

NINETY-SEVENTH: The disparate and adverse treatment Plaintiff (termination) was subjected due to his engagement in protected activity and Race, National Origin discrimination is clear and based on the preponderance of evidence (actions of World Courier) was more likely than motivated with discriminatory and retaliatory intent.


## AS AND FOR PLAINTIFF'S FIRST CASUE OF ACTION FOR RACE DISCRIMINATION IN VIOLATION OF TITLE VII.

NINETY-EIGHTH:   Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

NINETY-NINTH:     Plaintiff, at all relevant times herein, was a member of a protected class under Title VII.

ONE HUNDREDTH: Plaintiff, at all times relevant herein, was qualified in his employment position with Defendant World Courier.

ONE HUNDRED FIRST:    Plaintiff was subjected to adverse employment actions as set forth above because of Plaintiff's Race.

ONE HUNDRED SECOND: As a proximate result of Defendant World Courier's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to employment reputation; damages to his ability to secure similar employment in the future.

ONE HUNDRED THIRD:    Defendant World Courier acted intentionally and with malice and reckless indifference to Plaintiff's statutorily protected rights.

ONE HUNDRED FOURTH: As a proximate result of Defendant World Courier's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION FOR NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

ONE HUNDRED FIFTH:    Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED SIXTH:    Plaintiff, at all relevant times herein, was a member of a protected class under Title VII.

ONE HUNDRED SEVENTH:    Plaintiff, at all times relevant herein, was qualified in his employment position with Defendant World Courier.

ONE HUNDRED EIGHTH: Plaintiff was subject to adverse employment actions as set forth above because of Plaintiff's National Origin.

ONE HUNDRED NINTH:   Defendant World Courier acted intentionally and with malice and reckless indifference to Plaintiff's statutorily protected rights.

ONE HUNDRED TENTH:   As a proximate result of Defendant World Courier's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED ELEVENTH:     As a proximate result of Defendant World Courier's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION FOR RACE DISCRIMINATION IN VIOLATION OF NYEL

ONE HUNDRED TWELFTH:     Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED THIRTEENTH:   Plaintiff, at all relevant times herein, was a member of a protected class.

ONE HUNDRED FOURTEENTH:   Plaintiff, at all times relevant herein, was qualified in his employment position with Defendant World Courier.

ONE HUNDRED FIFTEENTH:     Plaintiff was subjected to adverse employment actions as set forth above because of Plaintiff's Race.

ONE HUNDRED SIXTEENTH:     As a proximate result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited

to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED SEVENTEENTH: As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S FIFTH CASUE OF ACTION FOR NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF NYEL

ONE HUNDRED EIGHTEENTH:    Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED NINETEENTH:    Plaintiff, at all relevant times herein, was a member of a protected class.

ONE HUNDRED TWENTIETH:    Plaintiff, at all times relevant herein, was qualified in his employment position with Defendant World Courier.

ONE HUNDRED TWENTY-FIRST:Plaintiff was subjected to adverse employment actions as set forth above because of Plaintiff's National Origin.

ONE HUNDRED TWENTY-SECOND:    As a proximate result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED TWENTY-THIRD:     As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S SIXTH CASUE OF ACTION FOR RETALIATION IN VIOLATION OF TITLE VII

ONE HUNDRED TWENTY-FOURTH:     Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED TWENTY-FIFTH:     Plaintiff engaged in protected activity by reporting discriminatory conduct to his supervisors.

ONE HUNDRED TWENTY-SIXTH:     As a result of plaintiff's engagement in protected activity, World Courier began a series of retaliatory treatment directed towards plaintiff.

ONE HUNDRED TWENTY-SEVENTH:   The retaliatory and adverse employment actions conducted against plaintiff occurred close in temporal proximity, to plaintiff's first engagement in protected activity.

ONE HUNDRED TWENTY-EIGHTH:     World     Courier     acted     knowingly, intentionally and with malicious intent altered the terms of plaintiff's employment in direct retaliation of hisengagement in protected activity in direct violation of Title VII.

ONE HUNDRED TWENTY-NINTH:     As a proximate result of World Courier's discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED THIRTIETH:     As a proximate result of World Courier's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

## AS AND FOR PLAINTIFF'S SEVENTH CASUE OF ACTION FOR RETALIATION IN VIOLATION OF NYEL

ONE HUNDRED THIRTY-FIRST:  Plaintiff hereby repeats and realleges the allegations contained in the preceding paragraphs with the same force and effect as though set forth at length herein.

ONE HUNDRED THIRTY-SECOND:     Plaintiff engaged in protected activity by reporting discriminatory conduct to his supervisors.

ONE HUNDRED THIRTY-THIRD: As a result of plaintiff's engagement in protected activity, the defendants began a series of retaliatory treatment directed towards plaintiff.

ONE HUNDRED THIRTY-FOURTH:     The retaliatory and adverse employment actions conducted against plaintiff occurred close in temporal proximity, to plaintiff's first engagement in protected activity.

ONE HUNDRED THIRTY-FIFTH: Defendants' acted knowingly, intentionally and with malicious intent altered the terms of plaintiff's employment in direct retaliation of his engagement in protected activity in direct violation of NYEL.

ONE HUNDRED THIRTY-SIXTH: As a proximate result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses including, but not limited to: deprivation of equal employment opportunities; loss of past and future earnings and other employment benefits; stains to their employment reputation; damages to their ability to secure similar employment in the future.

ONE HUNDRED THIRTY-SEVENTH:     As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

**WHEREFORE,** Plaintiff demands judgment against the defendants as follows:

1. For a money judgment representing actual damages against World Courier for its violation of plaintiff's rights under Title VII.

2.     For a money judgment representing compensatory damages against World Courier for its violation of plaintiff's rights under Title VII.

3.     For a money judgment representing punitive damages against World Courier for its violation of plaintiff's rights under Title VII.

4.     For a money judgment representing actual damages against Defendants for their violation of plaintiff's rights under NYEL.

5.     For a money judgment representing compensatory damages against Defendants for their violation of plaintiff's rights under NYEL.

6.     For a money judgment representing punitive damages against Defendants for their violation of plaintiff's rights under NYEL.

7.     For equitable and injunctive relief;

8.     For reasonable attorney's fees and costs; and

9.     For such other relief as the Court may deem just and proper.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury of all issues in this action.**

Dated: Islandia, New York
       May 24 , 2022

                                    **SCOTT MICHAEL MISHKIN, P.C.**


                                    By:     Scott Michael Mishkin, Esq.
                                            One Suffolk Square, Suite 240
                                            Islandia, New York 11749
                                            Telephone:  631-234-1154
                                            Facsimile:  631-234-5048
                                            *Attorneys for Plaintiff*

22